**CITY OF LOUISVILLE, Appellant,**

v.

**Mary W. HUMPHREY, Administratrix of the Estate of Ruel McKinley Humphrey, Deceased, Appellee.**

Court of Appeals of Kentucky.

Oct. 16, 1970.

Rehearing Denied Jan. 22, 1971.

Eugene H. Alvey, Director of Law, Richard C. Oldham, Robert C. Moore, Asst. Directors of Law, Louisville, for appellant.

Herman L. Humphrey, Paul L. Humphrey, Humphrey & Humphrey, Louisville, for appellee.

EDWARD P. HILL, Jr., Chief Justice.

The appellee obtained judgment on a verdict for $56,534.34 against appellant for injuries, resulting in the death of her husband, which she claimed he received after his arrest or while he was confined in the city's jail. The city appeals. We reverse. Before stating the facts, we should emphasize the appellee's theory of the case that her husband's fatal injuries were inflicted by one or both of the two arresting officers, or by a jail employee, or by a fellow prisoner.

The deceased, Ruel McKinley Humphrey, a hard-working man about 59 years of age with some drinking problems, was highly intoxicated about 2:15 a. m., on

the morning of November 21, 1966. He was wandering around in the vicinity of Frankfort and Hite Avenues, near his home, when a report was received by Louisville Police Headquarters that he was shaking doors in that neighborhood. The officers proceeded to arrest him and to deliver him to the booking clerk at the city jail at 2:35 a. m. He was retained in the holdover department in the basement of the city jail until 4:15 a. m., when he was taken by elevator to the third floor of the jail.

The two guards in charge of the third floor of the jail testified that immediately after the deceased stepped off the elevator on the third floor, he began to fall down or collapse. One of the guards caught him and lightened his fall. Shortly thereafter he was dragged by the two guards to the "drunk tank" and left lying on the floor with his feet toward the entrance of the tank. Two of the jail employees testified that no one else was in the "drunk tank" while the deceased was there. However, a third employee testified that he believed there was another prisoner in the "drunk tank" during that time.

At 7:15 a. m. a jail guard attempted to awaken deceased in order that he might appear in court that morning. The guard was unable to arouse him, concluding that Humphrey was in a high state of intoxication. At noon the guard again attempted to arouse him without success. He was then taken to Louisville General Hospital and found to be unconscious with a subdural hematoma from injuries apparently received around the left eye and forehead. He underwent brain surgery and died on December 13, 1966, without ever regaining consciousness.

On the trial of this case, the appellee proceeded on the theory that the deceased did not receive any serious injuries before his arrest. She relied on the testimony of the two arresting officers and that of a brother-in-law and sister of deceased. They testified the only injury observed by them about the person of the deceased was a small abrasion above the right eye, which did not amount to more than a mere scratch. Her theory of the case was further strengthened by the testimony of Dr. Robert F. Sexton, the neurosurgeon who performed the operation. He testified substantially that the injuries received by deceased were certainly inflicted less than 48 hours, and probably less than 36 hours, before his diagnosis.

Among others, the appellee called as witnesses the two jail employees who testified they dragged deceased into the "drunk tank." They testified they knew nothing whatsoever of any injuries inflicted upon the deceased while he was on the third floor of the jail. They also stated they heard no commotion or noise indicating that a person was being injured.

Only one of the seventeen prisoners confined in the city jail that night was used as a witness in this case, and he was called by the appellee. This prisoner testified that in the "wee" hours of the morning, shortly before daylight, he heard considerable noise coming from two people engaged in boisterous quarreling and that someone was getting beaten up pretty badly. He could not determine whether the noise came from the "drunk tank" or from another part of the prison. It seems strange that neither the appellant nor the appellee called as witnesses any of the other prisoners. And we are not attempting to cast any blame or criticism on either of the litigants for not so doing. Apparently the appellee was given the names of the prisoners.

The appellee complains in her brief that the names of the two guards who were on duty the fateful night were not given to her in answer to certain interrogatories. However, there was no objection made by the appellee to this failure, nor motion for continuance, nor effort made by her to call them as witnesses.

The appellee called the receiving clerk who booked the deceased in the basement

of the jail. He testified that he did not inflict any injuries on the deceased; that he knew nothing whatsoever about it; and that he was never interrogated by the higher prison officials or by the department of law of the city until he gave his deposition on December 16, 1968. The evidence clearly shows that other prison employees were never interviewed by the appellant and that none of the seventeen prisoners was ever interviewed by the appellant. It would seem that this is a bad way to run a railroad, more especially in a situation where a man imprisoned in the city jail has been injured and dies within a very short period thereafter. Nevertheless, the issue is not the failure of the appellant and its representatives or employees to conduct a proper investigation into the injuries of the deceased, but is whether there was probative evidence that an employee of the city inflicted injuries on the deceased, or that a fellow prisoner did so, and if so, that the city was negligent with respect to the infliction of his injuries by a fellow prisoner.

■ We may safely say that there is no direct evidence that any of the prison employees inflicted the injuries on the deceased. Neither is there any direct evidence that those injuries were inflicted by a fellow prisoner. The appellee suggests that the proof in the case warrants the application of *res ipsa loquitur*. With this theory we cannot agree. Although the evidence and circumstances come pretty close to creating an inference that the deceased received his injuries after his arrest and while he was in the custody of the city's employees, yet they fall short of justifying *res ipsa*. If we assume his injuries were received after his arrest, we are still left to speculate as to whether the injuries were received at the hands of the city employees or whether they were inflicted by a fellow prisoner. We cannot assume either to be the case.

■ Admitting for the purpose of discussion that the deceased was injured by a fellow prisoner, it is still incumbent upon the appellee to prove negligence on the part of the city in permitting those injuries. This court has written in a similar case that the city will not be liable unless it had knowledge of the violent propensities of the fellow prisoner. See City of Lexington v. Greenhow, Ky., 451 S.W. 2d 424 (decided March 6, 1970), and Ratliff v. Stanley, 224 Ky. 819, 7 S.W.2d 230 (1928).

It would appear at first blush that when the officers of the law arrest and confine a highly intoxicated person, the arresting authorities should exercise a degree of care higher than ordinary care, for the simple reason that they are dealing with a helpless human being. Yet, in many prisons, especially large city prisons, large numbers of highly intoxicated persons may be arrested and imprisoned in the short space of a few hours. It would be difficult to provide each and every such prisoner with a padded, injury-proof, individual cell. After all, in a great majority of cases the helpless drunk is safer in prison than outside.

The court is mindful of the hardship placed upon the plaintiff in this class of case by the rule that the plaintiff must prove knowledge of violent propensities of a fellow prisoner before a recovery will be permitted. It is common knowledge that highly intoxicated persons are not given to exercising good judgment or restraint, that they are subject to becoming belligerent on the least provocation.

A majority of this court is of the opinion that to place on the prison keeper the burden of going forward with proof simply upon a showing that a prisoner was injured while in prison would amount to holding that the prison keeper is the absolute insurer of the safety and well-being of the prisoner, which may result in an unfair burden on him.

■ It is concluded that the appellee did not meet the burden of proof required in our case law above cited. The judg-

ment is, therefore, reversed with directions to enter an order sustaining the appellant's motion for judgment notwithstanding the verdict.

MILLIKEN, NEIKIRK, OSBORNE, REED, and STEINFELD, JJ., concur.